My name is Justin Sumrey. I'm the attorney for the appellant Boulevard RE Holdings. We are here on an appeal of a motion for summary judgment ruling in favor of the appellee Mixon Insurance Company. This is a case about the duty of an insurance broker to a potential insured. Boulevard RE Holdings submitted three allegations of negligence. The first is that the duty to determine one's eligibility for the insurance being applied for, the duty to notify of a failure to procure the insurance as requested, as well as an allegation of negligence for Mixon Insurance Company sending out incorrect evidence of commercial property insurance which indicated to Boulevard RE that they had obtained insurance that they had not obtained. The district court's ruling really only addressed one of the allegations of negligence which was the allegation that Mixon Insurance Company failed to determine Boulevard RE's eligibility for the insurance that they were applying for. The court found that Mixon had no duty to determine the eligibility of Boulevard RE because it was a question as to whether Boulevard RE was a mortgagee or not and the court found that was outside I don't understand the focus on mortgagee. I don't understand why the basic, if there was a failure here it was the failure to have your client be the named insured. The mortgagee comes into play I know how it gets played out by the parties but I think it's beyond the point. If he had been the named insured, number one, your client would have gotten a copy of the policy and I infer that it did not and then it would have been plain. Well that's correct. And then we would be up to BMG's failure to have an operative sprinkler system. That's correct but I guess the mortgagee part comes into play because of the standard or union clause in the policy which would have protected against that. Protected against what? The sprinkler system issue. The mortgagee would have still recovered even though the negligence of BMG left the sprinkler off. So what's the case that says that the insurance company in this context had a duty to inform your client that they couldn't be a mortgagee on the policy? They were legally prohibited under state law. Well that would have been I believe the Bell v. O'Leary case which says a broker is in charge with knowledge of his business which includes an awareness of what facts render his clients ineligible for insurance coverage. We think that Mixon had a duty to determine whether they're eligible for the insurance that Mixon is attempting to. Is that something that's a part of insurance regulation requirement or is that case law from Missouri? That's just case law from the 8th Circuit which indicates that Mixon has that duty to determine eligibility. Additionally he took on the role of acquiring that insurance so we think at that point he's taken the responsibility to determine the eligibility and taking it away from Boulevard RE because they hired him to obtain that. Did the policy cover others besides your client? Yes. The policy that was actually obtained? Yes. Some of which recovered. I think another mortgagee recovered even though the sprinkler system was turned off. The court just addressed that one issue of negligence with regard to the eligibility question but didn't address the other two elements of negligence directly. The court then moved on to causation and stated essentially since Boulevard RE would have been in the same position had the policy been obtained as requested that Boulevard RE cannot show causation in this case. What was the communication from Berkeley to Boulevard RE that seems to be referenced in the briefs? The communication between the insurer. I think what it just been I believe BMG received a copy of the policy but whether that ever got to Boulevard RE is another question, is an open question that wasn't really addressed in the findings of fact. Your brief says that I guess it was Mixon sent Boulevard RE false quote evidence of commercial property insurance notices. Where do we look? What are the exhibits? They aren't in your addendum. The exhibits for the evidence of commercial property insurance, I believe it was attached to the amended complaint. That was sometime after the policy had been issued already. Mixon sent out this document entitled evidence of commercial property insurance which indicated that Boulevard RE had some insurance when it had no insurance. Will counsel tell me about your position on what liability is owed to your client based on the negligence alleged here? The district courts seem to say you lose based on causation, at least as to the main damage. But you're wanting damages for the specific negligence of the broker. Where do you look or where do you look at what that liability would include? The fire caused a complete loss of the building. The building was estimated $1.3 million or at least that was the policy that they got. Our argument is that they're liable for that entire amount because they led Boulevard RE to believe that their property was protected when it was not. This entire time they missed several opportunities to catch the fact that Boulevard RE was completely uninsured. What was the period of time that the policy was in effect? How long was it in effect? The policy was in effect I believe a little over a year. Maybe a year and six months is what I'm wanting to say off the top of my head. It was sometime around the end of 2007. At one point I believe the policy was renewed. I think it is over a year long that this policy was in effect. Is there ever any effort to try to obtain a copy of it or any effort to try to obtain a copy of it? The policy, so this case started as a declaratory judgment issue between the insurance company declaring that Boulevard RE had no rights under the policy. The actual policy itself was attached in that as part of the declaratory judgment. As the Berkeley case, right? Right. The policy in its entirety I believe is attached to that. What is the effect of the Berkeley case on this one? The effect of the Berkeley case is just that the court found that Boulevard RE was not a mortgagee and could not have recovered as a mortgagee under the policy. You're not trying to undo Berkeley. You're not trying to say you qualify as a mortgagee. You're trying to say we've got a direct case against the broker. Right. I'm not trying to undo that case. What's the law that gives you as kind of a third party in a sense the ability to go to the broker? Our position as an additional insured on the purported policy that was attempted to be obtained. The Nixon even submitted an application which listed Boulevard RE as he attempted to obtain insurance on behalf of Boulevard RE. It was unsuccessful so they're not really disputing it. What did you just refer to? The application for insurance that Nixon submitted did have Boulevard RE on it indicating they knew that they were additional insured on the policy or going to be. Nixon gets a policy that doesn't comply with its request. Correct. And it does nothing. Right. The only thing that he did do was send out this evidence of commercial property insurance indicating everything was kosher when it wasn't. But yes, he failed to notify Boulevard RE that the policy had not been procured as requested and we're arguing not only did he fail to notify, he sent them incorrect evidence of an exact opposite of what actually happened. So we think that's clear negligence and the court should have analyzed the causation with respect to that act of negligence as well. Was there ever a claim by Boulevard against BMG? No. And your brief asserts at one point that Boulevard was Nixon's client. That I don't understand. It seems to me BMG was obviously Nixon's client. It gets a little bit convoluted because BMG and Boulevard RE had the same owner at one point. That's irrelevant I think. Well in terms of what Nixon told BMG and whether that got to RE, I guess would be how that was an additional insured so Nixon owed them duties. It wasn't an additional insured. Well they didn't get, they were supposed to be named as an additional insured. That was a contractual issue between BMG and Boulevard. Correct. Not Nixon. Nixon still owed Boulevard RE duties. Why? I don't understand why. Boulevard was not its client. The client was BMG. Because Nixon took on the duty to obtain insurance, naming them in the manner requested. What's the case law or regulation that tells us that Nixon owed this duty to someone other than the party to which it was contracting? Well, I can, actually I've gotten into my rebuttal time. If you'd like I can try to go through that and find that and bring it up. That would be very helpful. Okay, thank you. Mr. Crashour. Thank you, your honors. May it please the court. I think it's important to note that which in fact by its very nature states in the document that it doesn't create a contract, confers no rights or obligations upon the party. You mean what Nixon spent? You talk about a certificate. That word is, it's the first time I've heard the word this morning. Sure, it's a certificate of insurance. It's number 47 in the appendix. Is this what I referred to as evidence? What Nixon sent Boulevard? Or is it something different? No, I don't think it is evidence, but it's what Boulevard's relying on. Is that what we're talking about? Yeah, the certificate of insurance. It's titled a certificate of insurance. And it goes from who to who? Whom to whom? It would go to Boulevard. No, by law, by the insurance regulation. Well, it goes to any party who's requesting a certificate of insurance. And where is the request from Boulevard to Nixon? The request, I'm not sure. There's no evidence that there was a specific request that I saw. Nixon dealt with BMG, the bad guy, in my view. Right. I mean, if there's a villain in this piece, other than a comedy of errors, it's BMG. That's correct, Your Honor. It went to BMG, not Boulevard. And so for Boulevard to rely on this certificate of insurance is misplaced. Not only is the language in the certificate— Is there anything in the law that's— Yeah, there's Cedar Hill Hardware versus Hanover. It's an Eighth Circuit case. It's 563 Federal 3rd, 329 at page 348. There's another Eighth Circuit case as well. Well, Counsel, what's the significance of the representation made to Boulevard that Nixon made that you're covering? Well, I don't think there was any representation made to Boulevard. It was the arrangement between Nixon and BMG, as this Court has already noted. So for Boulevard to now say that it should have been listed in different positions on the policy, whether as a mortgagee or as an additional insured, really lacks any support. And if you track Boulevard's argument, at the end of the day, if it was listed as a mortgagee, that would be a misrepresentation, as the District Court found in Berkeley and then also in the summary judgment order in this case. It would be a misrep—the proof of loss, as I understand it, said lender. Correct. So that was false? Boulevard's— Right. It had a contract for deed with Boulevard. That's not really a lender relationship. It's not a mortgage relationship. Well, again, the District Court determined that based on Missouri law, it would be a misrepresentation for Boulevard to say that it was a mortgagee or ask for a mortgagee status under the policy because a contract for deed is not— As I understand it, the—Mixon's insurance application or request had shown as having an insurable interest, A, B, C, or D, D being mortgagee. And now because of the sprinkler system, everybody wants to focus on mortgagee. But if the policy had called them a named insured or otherwise shown insurable interest, this claim wouldn't exist. Correct, because as a named insured or additional insured, if Boulevard had that status, there would be no coverage under the endorsement. But the sprinkler system would have precluded coverage. Correct, Your Honor. So Boulevard, under either position— Now I understand why this has been, what I thought, misfocused on mortgagee. It was to get around the endorsement. To get around the endorsement because as a named insured or additional insured— There's always a good reason for oral arguments. Right, that's the nail on the head, proverbially speaking. That's why they've raised that argument. So I think—and I have another Eighth Circuit citation for the certificate of insurance, if Your Honors would like it. It's the SLA property management versus Angelina Casualty Company case. It's 856 Federal 2nd 69 at page 73. Would you address the Bell case that— Yes, Your Honor. Thank you. Boulevard relies on the Bell case. The Bell case is clearly distinguishable from the case at hand here. Before the court, as the district court noted, Bell dealt with a question of fact and whether unincorporated property would have been excluded for coverage because it was on a flood plain. And that was, based on the court's determination, something that would be in the knowledge of— Pretty broad language. Well, it may be broad language, but the final holding was that that was something in the knowledge of an insurance agent because you can look at the codes and see what the property is. Here we're talking about the legal determination or analysis of a mortgagee, which the district court pointed out that's not the Bell case. The district court had to go through the analysis of Missouri law to determine whether or not Boulevard could have a mortgagee status if it had a contract or deed. And I think that's the key distinction here. An insurance agent is not a lawyer. Mr. Bill Mixon of Mixon Insurance was not a lawyer. He's passed away. For this court to say that— Why shouldn't the focus be just named insured? Does that make Bell still distinguishable or not distinguishable if the mistake was named insured? Well, I think if the request was made for a named insured, there would be a policy issued, and the question is, does the endorsement apply? So we get the end result of no coverage. I think the mortgagee status required a legal determination, though. And I think the important point is that legal determination is not something that an insurance agent is able to do. So Bell, we have a factual piece of information that was available in the perusal of the Code of Federal Regulations. Here we have a legal analysis performed by a district court judge to determine whether or not Boulevard fell under this mortgagee status, as it was trying to assert, to essentially do an end run around this endorsement that would provide no coverage if it was a named insured or additional insured. Was there information or documentation given to Mixon that the arrangement between Boulevard and BMG was a land sale contract? Not to my knowledge, no, Your Honor. I think what ended up happening is the policy was issued, and it was never given to, based on the evidence we have, to Mixon. It was issued to BMG. So the request was made by the customer, BMG, to have Boulevard added to the policy. There was no separate determination or evidence provided by BMG to Mixon to procure that insurance. As mentioned earlier, Mixon owed no duty to determine if Boulevard was a mortgagee under Missouri law. That's the Bell case, and it's distinguishable from the case at hand. There was no evidence here that Boulevard was unable to obtain coverage, and I think that's also a key distinction from the Bell case. In this case in Bell, there was just simply no coverage available for property that was unincorporated on the floodplain. Here, there could have been coverage, and the coverage was available, but whether or not the terms, conditions, exclusions would apply or other factual information that might apply to prevent coverage was another issue in and of itself. So I think this attempt by Boulevard to try and draw Bell into this case and rely on it for that proposition is misplaced. We have key distinctions that make Bell an opposite. Again, in the Wilmering v. Lexington case, there's no duty for an insurance agent such as Mixon to advise its customer, and here, as the court noted, arguably BMG, not Boulevard, but no duty to advise the customer of the terms, conditions, and all of the endorsements under the policy. So that's another point to be made. The plaintiff is essentially, or Boulevard is essentially trying to create a duty where there is no duty. And then finally on the last. Was there a duty to supply a copy of the policy? No, the policy, no there is not, Your Honor. The policy would be issued from Berkeley Assurance, and it would go to the insured here, BMG. I think at best, without getting into too much detail, but I think at best Boulevard could try and argue it was a third-party beneficiary to a contract, but again, that doesn't do away with the requirements under the policy. Did Mixon get a copy of the policy? No. The evidence in the case and to our knowledge, there was no policy sent from Berkeley to Mixon. The policy issues from the carrier to the insured. And then finally, with respect to Boulevard's argument that Mixon should be responsible for some procurator losses under this claim, here there has to be some damages that flow from this alleged negligent procurement. Here, as mentioned earlier, Boulevard would be in the same position either way, whether it was listed as a mortgage unit policy, because it would be a material misrepresentation, or if it was an additional insured or a named insured, there would be no coverage because of the fire protection safeguard endorsement, which that requires a working fire suppression system. The argument is that if we had known that we couldn't qualify as a mortgagee, that we would have made other arrangements and thus avoided the calamity that took place. That is the argument that Boulevard asserts, but again, that determination of whether or not it's a mortgagee because of the contract for deed is a legal determination. It can make the request to be listed as a mortgagee, and then the question is, well, how does the policy apply? It's one thing to request a policy that's available, and then whether or not there's coverage is another analysis, versus like the Bell case where there is simply no policies available for the type of risk you're seeking to insure, and I think that's the other key distinction. Is there evidence when Mixon learned that the policy did not show Boulevard as an additional insured? It's my understanding when suit was filed. Pardon? When suit was filed. The Berkeley suit or this suit? It would have been the Berkeley suit. And then finally, I think it's worth pointing out that the Berkeley decision by the district court acts as defensive issue preclusion on those key points, and as much as Boulevard tries to avoid the ultimate result from that, I think the district court was correct that Boulevard is essentially bound by that same analysis as law of the case. It does apply here. So for this court to reverse the district court's summary judgment in favor of Mixon would also require some undoing of the analysis from the Berkeley case, and I think that there is also an issue that Boulevard faces in this case, and it's never raised any issue on appeal or taken any issues with the issue preclusion analysis of the district court, so that's waived. And again, Boulevard is going to be bound by that analysis as law of the case. The court has no further questions. Mixon requests that this court affirm the district court's judgment. Thank you. Thank you, Mr. Krosh. Mr. Sumry, your rebuttal. Boulevard already was a third-party beneficiary to the contract, and in that context, Mixon owed Boulevard already these duties that we have broken out as far as our negligence claims. Say that again. Boulevard already was a third-party beneficiary to the contract or the policy between BMG and Mixon Insurance Company. And what case says that? As far as whether they were a third-party beneficiary? Yeah. Their status as a third-party beneficiary has never been challenged as far as their right to cover throughout this entire thing, throughout the Berkeley case, throughout this case. As far as whether Mixon ever got the policy, if they're claiming that Mixon ever got the policy, then that would beg the question of how or why they are sending out evidence of commercial property insurance to the parties if they don't have the policy themselves, or what basis they would have to claim that you're insured and send you evidence if they've never seen the policy themselves. So I don't believe that that is correct, but I did want to address the district court's… Are you factually correct, or what are the significance of it? As far as factually correct, why would Mixon be sending out supposed evidence of commercial property insurance? In this case, did you make any effort to question that? To question whether Mixon had… When Mixon learned that your client was not, in fact, the certificate that had set off a mistaken certificate of insurance. The issue is that Mixon, the actual insurance agent, is deceased. So pulling this information has been very difficult to determine the timeline of when and where and what was said. Okay, but did the district court understand this was a significant issue? Did you make it clear… As to what? That Mixon sent out, knowingly sent out, a false certificate. Yes, that was mentioned in our… Well, I don't know if he knew or if it was just negligence, but the point is he sent out the evidence of commercial property insurance. We certainly argued that. I would think there is a practice here, at least a custom and practice, of whether an insurance agent sending out a certificate of insurance to someone he thought was and should be an additional insured has a duty to look at the policy before doing that. Or whether, since it's the practice of the insurer to send it to the named insured, the agent relies on that. Arguably, whether reasonably or unreasonably, that then becomes a critical issue. I mean, I think we certainly raised that issue to the district court, but they never really discussed it in their ruling on the motion for summary judgment. Nor does your brief suggest it's significant on appeal. I just think it is. Well, yeah, we think it's very relevant. I mean, we listed it as a negligent act in the… What was the negligence? Not getting the policy or sending out the certificate? Well, I think both. But sending out the certificate when you don't have the policy would certainly be negligence as our position. If you've never seen the policy, why are you sending out… Well, if there are all these cases on certificates of insurance, I would think there would be law on that. I'm always surprised. I see my time is up. But we are requesting the case be remanded so the case can be heard on its merits. Thank you, Mr. Summary. Thank you to both counsel for the argument you provided to the court this morning in supplementation to the briefing. We will take the case for new advisement.